**UNITED STATES OF AMERICA**
**FIRST DISTRICT COURT OF MASSACHUSETTS**

NO.

| | |
|---|---|
| **ANTHONY N. WELLINGER** )<br>and )<br>**JEANETTE WELLINGER** )<br>of Massachusetts )<br>    Plaintiffs ) | $05$ᶜᵛ $1 1 2 4 7$ **RCL** |

vs.

**GEORGE GILMAN,**
a/k/a George Gilman, III,
a/k/a George U. Gilman, III,
of New Hampshire;

**CATHERINE GILMAN** of New Hampshire;

**PHILIP A. PARRY,** of Massachusetts;

**PHILIP A. PARRY, P.C.,** of Massachusetts;

**N.E. MOVES MORTGAGE CORPORATION,**
of Massachusetts
    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**PLAINTIFFS' VERIFIED**
**COMPLAINT**

RECEIPT # _650/9_
AMOUNT $ _250.00_
SUMMONS ISSUED _S_
LOCAL RULE 4.1 _____
WAIVER FORM _____ —
MCF ISSUED _____ —
BY DPTY. CLK. _M.P_
DATE _6/15/05_

MAGISTRATE JUDGE _MBB_

**THE JURISDICTION**

The Court has jurisdiction of this action under 28 U.S.C., Sec.
1332.

**THE PARTIES**

1.  **Plaintiffs:**

    **Anthony N. Wellinger,** a/k/a Anthony Wellinger, and **Jeanette**
    **Wellinger,** husband and wife, both of 12 Red Oak Acres, Merrimac,
    Essex County, Massachusetts.

2.  **Defendants:**

    **George Gilman,** a/k/a George Gilman, III, a/k/a George U. Gilman,
    III, of 63 Old Turnpike Road, Nottingham, Rockingham County, New
    Hampshire, and formerly married to Catherine Gilman;

1

**Catherine Gilman**, a/k/a Catherine A. Gilman, of 20 Violet Lane, Seabrook, Rockingham County, New Hampshire, formerly married to George Gilman;

**Philip A. Parry**, an attorney, of 4 Merrimac Square, Merrimac, Essex County, Massachusetts, member of the Massachusetts Bar and New Hampshire Bar and member of Philip A. Parry, P.C. and located in Essex County;

**Philip A. Parry, P.C.** is a professional corporation located in Essex County and registered to do business only in Massachusetts and not in New Hampshire;

**N.E. Moves Mortgage Corporation**, an affiliate of Caldwell Banker Residential Brokerage, is located at 1601 Trapelo Road, Suite 30, Waltham, Middlesex County, Massachusetts, and is registered to do business in Massachusetts and New Hampshire.

## THE FACTS

3. Anthony N. Wellinger, Jeanette Wellinger (Wellingers) with their four (4) minor children, one being a baby, wanted to move from their home at 177 Elm Street in Amesbury, Essex County, Massachusetts, because they didn't have enough room to live in and bring up their family.

4. Wellingers planned to sell their house in the morning and buy another house in the afternoon.

5. Wellingers found a suitable house for their growing family at 24 Andrews Lane, East Kingston, Rockingham County, New Hampshire.

6.  Wellingers signed (as an offer) the purchase and sale agreement dated March 14, 2004 on March 23, 2004 for the subject house in the amount of $294.000.00 owned by the Gilmans.

7.  The seller George U. Gilman, III signed his acceptance of the subject Purchase and Sale Agreement on March 26, 2004 for $294,000.

8.  The Seller Catherine Gilman signed her acceptance of the Purchase and Sale Agreement on March 25, 2004 for $294,000.

9.  The last act to bind the agreement was to notify the Wellingers in Massachusetts either verbally or by receiving a signed copy of the purchase agreement by the Gilmans.

10. Paragraph 4 of the Purchase and Sale Agreement, entitled "Purchase Price", contained information that the sales price for the subject real estate was going to be $294,000. and that there was to be an escrow account held by the broker Carlson GMAC Real Estate/Stratham.

11. Paragraph 6 of the Purchase and Sale Agreement entitled "Delivery of Deed" states: "Transfer of title: on or before May 21st, 2004 at Attorney's office, Registry of Deeds, Lending Institutions, or some other place of mutual consent".

12. Wellingers had some transfer problems with the Buyer of their Amesbury home and requested the transfer of title and financing of the Gilman property to occur on May 27, 2004, a Thursday.

13. Wellingers were informed the title passing of papers of the Gilman property would occur at Philip A. Parry's law office in Merrimac, MA on May 27, 2004.

14.   Wellingers arrived for the passing of papers at the appointed
      time on May 27, 2004.

15.   Wellingers were told at Philip A Parry's law office (and also
      Philip A. Parry, P.C.'s office)(Parry) on May 27, 2004 when they
      appeared for the closing that the Gilmans were having a
      contentious divorce, and there would not be any passing that day
      because Catherine Gilman did not want to show up for the closing.
      Mr. Gilman also did not show up.

16.   Wellingers were told the next day by their broker that Catherine
      Gilman had gone on vacation.  No passing date could be set at
      that time for the closing until June 2, 2004.

17.   Wellingers with their four minor children did not have any place
      to live in over the Memorial Day weekend to June 2, 2004 as their
      house in Amesbury had already been sold and papers recorded.  The
      Wellingers finally found a hotel to stay in for temporary
      housing.

18.   The passing date was arranged at Parry's law office in Merrimac,
      MA to be June 2, 2004.

19.   On June 2, 2004, the passing of papers began about 1:00 P.M.  All
      interested parties were present.  During the passing of papers,
      George Gilman saw on the "HUD" Statement that his former wife
      Catherine Gilman owed over $70,000.00 to the Internal Revenue
      Service.  George Gilman vigorously protested that he should pay
      her business debts and refused to sign the Deed and other closing
      papers.  He let it be known that until the taxes were adjusted
      his way, he would not cooperate in completing the passing.

4

20.  After three hours of vigorous wrangling between the Gilmans and
     their attorneys, and the Wellingers crying because they had no
     place to live, George Gilman finally signed the Deed, HUD
     Statement and other financial statements, along with Catherine
     Gilman in conveying over their interest and title of the subject
     real estate property located at Andrews Lane in East Kingston,
     New Hampshire to the Wellingers.

21.  It was about 5:00 P.M. when the Deed was delivered to the
     Wellingers as well as the keys to the house by the Gilmans,
     including all the other remaining closing papers.

22.  Parry announced to the Wellingers that he worked for N.E. Moves
     (Bank) and that the Wellingers were paying his fee, and that was
     part and condition of the agreement the Bank lent Wellingers the
     money to buy the subject real estate.

23.  Parry also told the Wellingers that if they had any problems with
     regard to the passing, they should consult with their own
     attorney.   Wellingers had no attorney for themselves in
     attendance at the closing.

24.  Parry, nevertheless, insisted that if the transaction between the
     Gilmans and Wellingers was to be completed, he would have to take
     possession and control of the Deed and finance papers and put
     them on record at the Rockingham County Registry of Deeds before
     he would disperse any funds to and from the parties.

25.  Parry insisted and took control and possession of the Wellingers
     Deed intending to file at the Rockingham County Registry of Deeds
     the next day.

5

26.   Parry made it clear to all present that the handling of the Deed
      and Bank's loan papers was the procedure the Bank expected him to
      follow in doing business with the Bank. And further, it was the
      required procedure he was to use to protect the Bank's financial
      interest.

27.   Upon concluding the passing and waiting for the news later that
      the papers were on record, the Wellingers met George Gilman
      outside in the parking lot after the passing of papers.

28.   George Gilman said to the Wellingers that although he was
      probably acting against his attorney's advice, the Wellingers
      could move into the house that night if they wanted to.
      Wellingers declined the offer because there might still be a
      problem before the papers were put on record.

29.   On or about June 2, 2004, about 7:30 P.M. the same day as the
      closing, Attorney Peter A. Riley (Riley), Attorney for George
      Gilman in New Hampshire called Attorney Parry in Massachusetts
      and informed him not to record the Gilman Deed and, if he did, he
      would be sued.

30.   Riley's withdrawal of authorizing the delivery of the Deed with
      intended title was further communicated by a faxed announcement
      at 21:15 hours on June 2, 2004 to Parry.

31.   Parry next morning called the Bank about the situation. Parry
      recommended the Deed not be put on record and the Bank requested
      him to send the documents back to the Bank.   The loan was
      removed.

6

32. Parry later called the Wellingers and explained the telephone call from George Gilman's attorney. Parry spoke about how he had spoken with the Bank and of its decision to remove the loan from Wellingers until the matter resolved itself, if possible, in a few days.

33. Parry advised the Wellingers to seek an attorney and obtain damages from the Gilmans for breach of contract.

34. The Wellingers through their attorney on June 3, 2004, requested their money back from Parry, which he did but kept the Deed.

35. Subsequent to June 2, 2004, George Gilman's attorney (Riley) offered the Wellingers the opportunity to enter the house if they paid a sizeable rent.   This tenancy would continue until the Gilmans divorce problems were resolved in Probate Court over the distribution of property and division of a tax debt.    The Wellingers declined.   They needed a stable home setting for their family.

36. June 8, 2004 Parry confirmed that the original documents had been returned to the Bank and the mortgage proceeds wired back to the Bank, thereby canceling the mortgage financing.

37. On June 10, 2004, Wellingers' attorney sent a release to George Gilman through his attorney to return the escrow amount.

38. On June 10, 2004, Wellingers' attorney sent a release to Catherine Gilman through her attorney to release the escrow amount.

39. On June 10, 2004, George Gilman, through his attorney, responded saying his client has as a right to the escrow because the

7

Wellingers were in default on the purchase and sale agreement.
But suggested the Wellingers move into the house and pay rent
pending resolution of the Gilmans divorce problem.

40.  One June 14, 2004, Catherine Gilman, through her attorney,
     represented to Parry and not Wellingers, that failure to record
     Deed was not due to any action by her.

41.  On June 17, 2004, Wellingers sent a 93A Demand Letter to N.E.
     Moves Corporation that withdrawing funding was an unfair or
     deceptive act or practice.

42.  On June 17, 2004 Wellingers, through their attorney, sent a 93A
     Demand Letter to Parry that he misrepresented what he planned to
     do with the Deed, and by his violation of a fiduciary duty to
     Wellingers, committed an unfair or deceptive act or practice
     against the Wellingers.

43.  On July 12, 2004, the Bank denied any wrong doing or unfair or
     deceptive practice because the fault was with the Sellers, the
     Gilmans.

44.  On July 17, 2004, Parry denied any wrong doing or unfair or
     deceptive practice to the Wellingers because his duty was to the
     Bank, and there was no fiduciary duty to the Wellingers.

45.  On August 30, 2004, Wellingers purchased a house in Merrimac, MA
     similar in use to the Gilman house in New Hampshire but for an
     increased amount of $369,500., an increase in purchase price of
     $75,500.00 for a similar house.

46.  On October 28, 2004, George Gilman through his attorney informed
     Wellingers through their attorney that the Gilmans were entitled

8

to the escrow money because Wellingers were in default under the purchase and sale agreement.

47. On February 18, 2005, Catherine Gilman through her attorney stated the Wellingers should have the escrow money and signed a release of funds and claims.

### COUNT I

### BAILMENT VERSUS PARRY

48. Plaintiff Wellingers incorporate by reference Paragraphs 1 through 47, inclusive, and make them a part of Paragraph 48.

49. The Gilmans executed a Deed to their property at Parry's office and delivered it to the Plaintiffs at a real estate passing of papers.

50. The Deed then was either actually or intended constructively to be delivered to Parry to record at the Rockingham County Registry of Deeds.

51. Parry voluntarily assumed custody and possession of the subject Deed detailing the Wellingers' legal rights to land.

52. The Wellingers owned the Deed when transferred to Parry.

53. The Wellingers had accepted the Deed and key from the house by the Gilmans at the real estate passing of papers.

54. Parry took possession of the Deed for the express or implied contract made with the Wellingers to put the Deed on record at the Rockingham County Registry of Deeds followed by the Bank papers to establish the Bank as a first lien holder on the land.

55.  Parry in taking the Deed took it in bailment or in a quasi trust
     relationship with the Wellingers without any transfer in title
     back to the Gilmans or other third parties in any way.

56.  At all times it was understood that upon Parry recording the
     Deed, the Deed would be returned to the Wellingers in the usual
     and regular manner of business conducted by the Rockingham County
     Registry of Deeds in New Hampshire.

57.  This bailment between Parry and the Wellingers was a consensual
     relationship for a lawful purpose.    It was premised on
     uninterrupted retention of title in the Wellingers.

58.  Even if Parry would receive the benefit of compensation in the
     real estate transaction from the Wellingers or represented the
     Bank otherwise, Parry still had a duty to put the Deed on record
     unless ordered otherwise by a Court.    In the meantime before
     filing the Deed, Parry by accepting the Deed in bailment had to
     meet the requisite and sufficiency of an agreement between
     himself and the Wellingers regarding his obligation.    That
     obligation was to put the Deed on record and pay the Gilmans the
     sales price.

59.  Parry had the duty in accepting the Deed to be obliged to the
     Wellingers for fair dealing and voluntary consent to perform his
     obligation without the presence of fraud or deceit.

60.  But Parry did revoke his acceptance of the bailment without
     justification.    Parry refused to put the Deed on record and pay
     the Gilmans their money.

10

61.   Parry knew or should have known that his act of breaching his
      obligation would be a direct and/or a foreseeable cause of damage
      and injury to the Wellingers.

62.   Parry has failed to show skill as well as care in performing the
      undertaking as a bailee of the Wellingers' Deed and its intended
      purpose.   In performing his bailment, Parry had a further duty
      not to conspire with another to defeat the transfer of title as
      well as not induce another to help him to prevent his performance
      as a bailee regarding his services to the Plaintiff.

63.   As a consequence of Defendant Parry's acts, the Plaintiff's
      suffered physical and emotional injury, loss of pay, loss of
      food, loss of money for housing food, storage for animals,
      laundry, loss of savings, loss of job opportunity, pain and
      suffering, loss of consortium; cost of medicine, transportation,
      medical treatment and care, loss of down payment, loss of
      mortgage interest, cost difference for new mortgage interest
      rate, cost of difference in increase for compatible and similar
      home, cost of housing, cost of babysitters, psychiatric cost for
      the family, emotional distress, loss of consortium, caused by
      this unfair and outrageous behavior, attorney fee, new loan and
      bank   costs,   humiliation,   loss   of   interest   on   savings,
      transportation and animal costs.

64.   WHEREFORE, the Plaintiff Wellingers demand Judgment against said
      Defendant Parry in an amount determined by this Court, including
      costs, interest and applicable attorney fees.

11

## COUNT II

### CONVERSION VERSUS PARRY

65. Plaintiffs Wellingers incorporate by reference Paragraphs 1 through 62, inclusive, and make them a part of Paragraph 65.

66. Parry did take Wellingers' Deed and converted it in derogation of Wellingers title and possession rights it contained.

67. Parry did violate what was known, should have been known, to what was represented would be done with the Deed, namely to record it.

68. Parry, in addition, has placed the Wellingers' rights under the Deed beyond his power to the Wellingers with great inconvenience, expenses, as now being worthless by exerting his wrongful authority.

69. Parry's unlawful tortuous acts render him liable in the proximate or was foreseeable cause for injury or loss to the Wellingers whether or not he might be negligent.

70. Wellingers incorporate by reference Paragraph 63 herein and make it a part of Paragraph 70.

71. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant Parry in an amount determined by this Court, including costs, interest and applicable attorney fees.

## COUNT III

### NEGLIGENCE VERSUS PARRY

72. Plaintiff Wellingers incorporate by reference Paragraphs 1 through 62, inclusive, and make them a part of Paragraph 72.

73. Parry committed a careless act in failing to use that degree of care to record Wellingers' Deed so as to prevent harm to them.

12

74.  Parry did not use the care that a reasonably prudent person would use under the circumstances, either by doing something that a reasonably prudent person would not do or by failing to do something that a reasonably prudent person would do under similar circumstances.

75.  Parry owed the Wellingers a duty of reasonable care in choosing a reasonable location for a passing the contentiousness of the sellers Gilmans and when confronted with George Gilman's attorney on behalf of George Gilman stating the Deed delivery is cancelled and not to record or he would be sued, Parry knew that if the Deed was recorded and the Bank's papers were put on record, the Wellingers would not be harmed because Parry knew or should have known there was no outstanding Protective Order from a Court known to be available, contract agreement or statute to prevent recording.   Parry also would reasonably know George Gilman was doing this to involve Parry in their domestic dispute over property which had no bearing on the rights Wellingers then had.

76.  Wellingers incorporate by reference Paragraph 63 herein and make it a part of Paragraph 76.

77.  WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant Parry in an amount determined by this Court, including costs, interest and applicable attorney fees.

13

## COUNT IV

### NEGLIGENT MISREPRESENTATION VERSUS PARRY

78. Plaintiff Wellingers incorporate by reference Paragraphs 1 through Paragraph 75, inclusive, and make them a part of Paragraph 78.

79. Parry supplied false, if not reckless, information concerning facts, namely, that he would record the subject Deed after the passing of papers for the Wellingers and that the place of closing at Parry's offices instead of at the Registry of Deeds was safe to totally pass title and close the financial arrangements for payment. These are facts that the Wellingers would consider important in their decision that any questions to delay Deed recording would not occur and affect their rights.

80. Parry in making the above statement negligently failed to determine whether it was true or false considering he knew about the Gilmans' contentiousness. Parry acted negligently in making the above statement about an important fact without using the amount of care a reasonable person would use in those circumstances to see that what he said was true.

81. Parry made the false and reckless statement with the intention that the Wellingers would rely on that statement in making their decision.

82. Wellingers in making their decision did in fact rely on Parry's above statement as true and that the Wellingers' reliance was reasonable under the circumstances.

14

83. The Wellingers suffered financial loss as a result of relying on Parry's false statement that he would be able to record the Deed implying no interruption except a legal injunction would prevent his duties.

84. Wellingers incorporate by reference Paragraph 63 herein and make it a part of Paragraph 84.

85. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant Parry in an amount determined by this Court, including costs, interest and applicable attorney fees.

### COUNT V

### CIVIL CONSPIRACY - COERCION

### VERSUS PARRY AND N.E. MOVES CORPORATION

86. Plaintiff Wellingers incorporate by reference Paragraphs 1 through 83, inclusive except Paragraphs 64, 71, 77 and 85, and make them a part of Paragraph 86.

87. Parry and N.E. Moves Corporation (Bank) did act in concert vicariously to commit a wrongful act against the Wellingers.

88. Parry and the Bank acting in unison, Parry having the down payment and possession of the Deed, and the Bank holding the funds to pay the balance of the sales price to the Gilmans, by coercion over the Wellingers that they would not have had if they had been acting independently, collectively without justification, conspire and did cause the Wellingers damage and injury.

15

89.  Parry and the Bank collectively were able to negate any attempt
     by the Gilmans to revoke the Deed from being recorded after it
     was delivered to the Wellingers.

90.  Wellingers incorporate by reference Paragraph 63 herein and make
     it a part of Paragraph 90.

91.  WHEREFORE, the Plaintiff Wellingers demand Judgment against said
     Defendants Parry and N.E. Moves Corporation, either jointly or
     individually, in an amount determined by this Court, including
     costs, interest and applicable attorney fees.

## COUNT VI

### CIVIL CONSPIRACY - COMMON LAW

### VERSUS PARRY AND N.E. MOVES CORPORATION

92.  Plaintiff Wellingers incorporate Paragraphs 1 through Paragraph
     89, inclusive except Paragraphs 71, 77 and 85, and make them a
     part of Paragraph 92.

93.  The Defendants Parry and the Bank did act in concert vicariously
     to commit a wrongful act against the Wellingers.

94.  The wrongful act was to intentionally interfere with an
     advantageous relationship the Wellingers had with the Defendant
     Gilmans by not recording their Deed to the Wellingers of land in
     East Kingston, NH.

95.  Parry and the Bank had no justification at law, contract, or
     Protective Order not to perform.

96.  Parry and the Bank did tortuously act in furtherance of their
     agreement to conspire to prevent the Wellingers in gaining record
     title and failing to pay the sales price to the Gilmans.

97.  Parry and the Bank knew or should know that great damage and
     injury would occur to the Wellingers.

98.  Wellingers incorporate by reference Paragraph 63 herein and make
     it a part of Paragraph 98.

99.  WHEREFORE, the Plaintiff Wellingers demand Judgment against said
     Defendants Parry and N.E. Moves Corporation, either jointly or
     individually, in an amount determined by this Court, including
     costs, interest and applicable attorney fees.

## COUNT VII

### INTERFERENCE WITH A CONTRACTUAL RIGHT VERSUS PARRY

100. Plaintiff Wellingers incorporate by reference Paragraphs 1
     through 83, inclusive except for Paragraphs 64, 71 and 77, and
     make them a part of Paragraph 100.

101. Wellingers, in a business matter, had a contractual relation to
     purchase a home and land from the Gilmans.

102. Parry knew of this contract of sale between the Gilmans and the
     Wellingers.

103. Parry, with an improper notice or using improper means, induced
     the Bank to break this contract with the Gilmans without
     justification and not fund the sale price after the passing of
     papers and before recording the Wellingers' Deed.

104. This above act did interfere with the Wellingers concluding
     obtaining title to real estate and being unable to fully pay for
     the contracted property.

105. Parry and the Bank were the foreseeable and/or proximate cause of damage and injury to the Wellingers who were innocent of any wrong doing.

106. Wellingers incorporate by reference Paragraph 63 herein and make it a part of Paragraph 106.

107. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant Parry in an amount determined by this Court, including costs, interest and applicable attorney fees.

**COUNT VIII**

**M.G.L. CHAP. 93A VIOLATION VERSUS PARRY**

108. Plaintiff Wellingers incorporate by reference Paragraphs 1 through 105, inclusive except for Paragraphs 64, 71, 77 and 107, and make them a part of Paragraph 108.

109. Wellingers sent Parry a Chapter 93A Demand Letter on or about June 17, 2004 claiming a breach of fiduciary duty (bailment) and claiming Parry did unfair, deceptive or fraudulent acts and practices in not recording Wellingers' Deed.

110. Parry responded on July 16, 2004 that he acted properly and appropriately in all matters related to the closing, owing no duty or breached any duty to the Wellingers. But in return Parry states he owes his duty to the Bank for whom he worked in the real estate closing.

111. Wellingers claim Parry is in the business or commerce of doing real estate closings for consumer and financial institutions and performs duties of taking deeds and financial papers to record at Registry of Deeds in Massachusetts and New Hampshire for pay.

18

112. Wellingers were consumers protected by M.G.L. Chap. 93A and also homeowners.

113. Parry's negligent misrepresentation that he would put the Deed on record, but didn't record the Deed knowingly and without legal justification, was an unfair or deceptive practice or act against the Wellingers.

114. Parry has violated M.G.L. Chap. 93A and has caused considerable injury to the Wellingers.

115. The Wellingers incorporate by reference Paragraph 63 herein and make it a part of Paragraph 115.

116. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant Parry in an amount determined by this Court, including applicable multiple damages, costs, interest and applicable multiple attorney fees.

### COUNT IX

### NEGLIGENCE VERSUS N.E. MOVES CORPORATION

117. Plaintiff Wellingers incorporate by reference Paragraphs 1 through 97, inclusive except Paragraphs 64, 71, 77, 85, 91 and 99, and makes them a part of Paragraph 117.

118. The Defendant N.E. Moves Corporation (Bank) had a duty not to interfere with Wellingers' relationship with third persons where the title was not clouded of record and the financial papers on file would give the Bank a first lien.

119. The Bank carelessly and negligently withheld financial support from the Wellingers when there was no justifiable reason that could affect their security of being a first lien holder.

120. The Bank did cause harm to the Wellingers.

121. The Wellingers suffered harm and injury the same as set out in Paragraph 63 above.

122. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant N.E. Moves Corporation in an amount determined by this Court, including costs, interest and applicable attorney fees.

### COUNT X

### INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

### VERSUS N.E. MOVES CORPORATION

123. Plaintiff Wellingers incorporate by reference Paragraphs 1 through 83, inclusive except Paragraphs 64, 71, and 77, and make them a part of Paragraph 123.

124. Wellingers, in a business matter, had a contract relationship to purchase a home and land from the Gilmans.

125. N.E. Moves Corporation (Bank) knew of this contract of sale between the Gilmans and the Wellingers.

126. The Bank with an improper motive or using improper means agreed vicariously with Parry, its attorney in this matter, to break the contract with the Wellingers without justification and not fund the sale price after passing of papers and before recording of the Deed for the Wellingers.

127. Parry and the Bank were the foreseeable or proximate cause that would damage and injure the Wellingers who were innocent of any wrong doing.

128. Wellingers incorporate by reference Paragraph 63 herein and make it a part of Paragraph 128.

129. WHEREFORE, the Plaintiff Wellingers demand Judgment against said
Defendant N.E. Moves Corporation in an amount determined by this
Court, including costs, interest and applicable attorney fees.

### COUNT XI

### NEGLIGENT MISREPRESENTATION VERSUS N.E. MOVES CORPORATION

130. Plaintiff Wellingers incorporate by reference Paragraphs 1
through 127, inclusive except Paragraphs 64, 71, 77, 85, 107,
116, 122 and 129, and make them a part of Paragraph 130.

131. N.E. Moves Corporation (Bank) is in the usual course of business
in lending money to homeowners or prospective homeowners in
Massachusetts and New Hampshire.

132. The Bank made a false statement that it would lend money to the
Wellingers and that, if the Wellingers performed what the Bank
agreed to, it would hold the lien. A real estate passing took
place at Parry's office. Everything was in order. There was no
justifiable legal impediment to not record the loan papers to be
a protected first lien holder to the Wellingers recorded Deed.

133. The Bank withdrew its loan through no fault of the Wellingers but
upon a threat without legal justification by Defendant George
Gilman who wanted to change his mind about his delivery of his
Deed.    The statement that the Bank would lend money to the
Wellingers was false.

134. The Bank acted negligently and carelessly in failing to determine
whether its statement was true or false to so act and not tell
the Wellingers in advance as to what it could do about
withdrawing a loan.

21

135. The Bank acted negligently about this important fact without using the amount of care a reasonable person would use in the circumstances to see what it said was true to the Wellingers.

136. The Bank made the false and reckless statement with the intention that the Wellingers would rely on statement it would lend the Wellingers money in making their decision to engage the Bank as their bank for financing.

137. In making its statement, the Wellingers did in fact rely on the Bank's statement as true and Wellingers' reliance was reasonable under the circumstances.

138. As a result of Bank's negligent misrepresentation of an important fact, the Wellingers, who are innocent of any wrong doing, suffered financial loss as a result of relying on the Bank's false statement.

139. Wellingers incorporate by reference Paragraph 63 herein and make it a part of Paragraph 139.

140. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant N.E. Moves Corporation in an amount determined by this Court, including costs, interest and applicable attorney fees.

### COUNT XII

### M.G.L. CHAP. 93A VIOLATION VERSUS N.E. MOVES CORPORATION

141. Plaintiff Wellingers incorporate by reference Paragraphs 1 through 105, inclusive except Paragraphs 64, 71, 77 and 85, and make them a part of Paragraph 141.

142. Wellingers sent N.E. Moves Corporation (Bank) a 93A Demand Letter on or about June 17, 2004 claiming that it conducted unfair and

deceptive act or practice upon the Wellingers in withdrawing
their loan without justification and any cause by the Wellingers.

143. The bank responded that they have not performed any acts that
were deceptive or unfair.

144. The Wellingers are consumers, homeowners or anticipated
homeowners.

145. The Bank is in the business or trade of giving consumer home
mortgages in Massachusetts and New Hampshire to qualified
borrowers.

146. The Bank represented, committed and has apparently lent money to
the Wellingers to pay for their home purchase from the Gilmans on
or about June 2, 2004.

147. Before the Deed was recorded with no justifiable risk to having a
first lien position, the Bank withdrew the loan with the
assistance of Parry, its attorney, for the real estate closing.

148. Defendant Gilmans had delivered a Deed to Parry, the Bank's agent
and bailee of the Wellingers. George Gilman changed his mind
before the Deed was recorded and verbally threatened to sue and
withdrew his delivery of the Deed.

149. The Bank, without right or good cause, by negligent
misrepresentation, withdrew the loan from the Wellingers.

150. The Bank violated M.G.L. Chap. 93A, Sec. 2 as amended, upon the
Wellingers who thereafter were damaged, injured and financially
injured by the Bank's unfair or deceptive acts or practices.

151. Wellingers incorporate by reference Paragraph 63 herein and make
it a part of Paragraph 151.

152. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant N.E. Moves Corporation in an amount determined by this Court, including application multiple damages, costs, interest and applicable multiple attorney fees.

### COUNT XIII

### BREACH OF CONTRACT VERSUS GEORGE GILMAN

153. Plaintiff Wellinger incorporates by reference Paragraphs 1 through 62, inclusive, and make them a part of Paragraph 153.

154. The Defendant George Gilman broke the purchase and sale contract to sell his interest in land located at 24 Andrews Lane, East Kingston, NH.

155. The contract made by the parties was upon mutual consideration.

156. As a result of Defendant George Gilman's breach of contract performance on or about June 2, 2004, the Wellingers were damaged.

157. The damages caused by the Defendant George Gilman follow the natural consequences of the breach are loss of deposit, difference in buying a new house of similar use and kind for six persons, expenses caused by the breach finding temporary housing, increased financial expenses caused by re-mortgaging, increase in interest rate, increase in difference of buying new house, increase in mortgage costs, and those other expense flowing from the natural consequence of the breach of the contract to place the Wellingers in the same position they would have been in except for the breach.

158. The Wellingers had otherwise been ready, willing and able to perform the contract.

159. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant George Gilman in an amount determined by this Court, including costs, interest and applicable attorney fees.

### COUNT XIV

#### NEGLIGENT MISREPRESENTAION VERSUS GEORGE GILMAN

160. Plaintiff Wellingers incorporate by reference Paragraphs 1 through 75, inclusive, and make them a part of Paragraph 160.

161. The Defendant George Gilman was a seller and one-half title holder of land at 24 Andrews Lane, East Kingston, NH.

162. On or about June 2, 2004, George Gilman supplied false information that he would sign a Deed and HUD statement to sell his interest to the Wellingers, knowing that the Wellingers would reasonably consider important to their decision that they were buying themselves a home.

163. When George Gilman gathered or supplied the information he would sell, he negligently failed to determine whether his intentions and further actions were false.

164. In making his decision that the Wellingers and four children would have a home at last, the Wellingers relied upon the information that a deed would be delivered to them, including title as defined in the purchase and sales agreement for recording the next day without interference in anyway by George Gilman.   The Wellingers relied upon the fact that George Gilman intended the information and his acts to influence or knew the

25

Wellingers so intended or in a substantially similar transaction to believe him.

165. Wellingers in making their decision did in fact rely upon the information and acts of George Gilman supplied as true and that their reliance was reasonable in the circumstances.

166. As a result the Wellingers suffered that damage set out in Paragraph 157 above in relying upon the information supplied by the Defendant, George Gilman.

167. Wellingers incorporate by reference Paragraph 63 herein and make it a part of Paragraph 167.

168. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant George Gilman in an amount determined by this Court, including costs, interest and applicable attorney fees.

### COUNT XV

### BREACH OF CONTRACT VERSUS CATHERINE GILMAN

169. Plaintiff Wellingers incorporate by reference Paragraphs 1 through 62, inclusive, and make them a part of Paragraph 169.

170. The Defendant Catherine Gilman was a seller and one-half title holder of land located at 24 Andrews Lane, East Kingston, NH.

171. Catherine Gilman broke that portion of the purchase and sale contract affecting the sale from May 27, 2004 to June 2, 2004 by not appearing and performing to sign a Deed of her ownership to said land.

172. As a result of said breach of contract, the Wellingers were caused to find temporary living and housing plus expenses for six persons, including therein four children.

173. The parties had made this contract upon mutual consideration.

174. The damages caused by the Defendant Catherine Gilman follow the natural consequences of the breach in the above period in Paragraph 171, that being loss of deposit, cost of child care, cost of housing, food, transportation, loss of savings, and other expenses to restore the Wellingers to the same position they would have been in except for the breach by Catherine Gilman.

175. Wellingers were ready, able and willing to perform at all times.

176. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant Catherine Gilman in an amount determined by this Court, including costs, interest and applicable attorney fees.

## COUNT XVI

### NEGLIGENT MISINFORMATION VERSUS CATHERINE GILMAN

177. Plaintiff Wellingers incorporate by reference Paragraphs 1 through 75, inclusive, and make them a part of Paragraph 177.

178. The Defendant Catherine Gilman was a seller and one-half title holder of land at 24 Andrews Lane, East Kingston, NH.

179. On or about March 25, 2004, Catherine Gilman signed a purchase and sale agreement and supplied false information that she would convey title to the Wellingers at a passing of papers, knowing that Wellingers would reasonably consider important to their decision that they were buying themselves a house.

180. When Catherine Gilman gathered and supplied the information she would sell, she negligently failed to determine whether her intentions and further actions were false.

27

181. In making her decision that the Wellingers and four children would have a home at last, the Wellingers relied upon the information that a Deed would be delivered to them, including title as defined in the purchase and sale agreement, for recording without further interference from Catherine Gilman. Wellingers relied upon the fact that Catherine Gilman intended the information and her acts to influence or knew the Wellingers so intended or in a substantially similar situation to believe her.

182. In making Wellingers decision, they did in fact rely upon the information and acts Catherine Gilman supplied as true and that Wellingers reliance was reasonable in the circumstances.

183. As a result, the Wellingers suffered that damage from the time period of May 27, 2004 to June 2, 2004 relying upon the information supplied by the Defendant Catherine Gilman. The damages caused by the Defendant Catherine Gilman follow the natural consequences of the breach in the above period in Paragraph 171, that being loss of deposit, cost of child care, cost of housing, food, transportation, loss of savings, and other expenses to restore the Wellingers to the same position they would have been in except for the breach by Catherine Gilman.

184. WHEREFORE, the Plaintiff Wellingers demand Judgment against said Defendant Catherine Gilman in an amount determined by this Court, including costs, interest and applicable attorney fees.

**VERIFICATION STATEMENT**

COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                                    June 8, 2005

        We, Anthony N. Wellinger and Jeanette Wellinger,
being first duly sworn, state that we are the Plaintiffs
in the above entitled action, we have read the foregoing
Complaint and know the contents thereof; and that the
same is true to our own knowledge.

Anthony N. Wellinger

Jeanette Wellinger

Subscribed and sworn to before me on this 8th day of June,
2005.

Thornton E. Lallier
Justice of the Peace
My Commission Expires: 6/12/09

By the Plaintiffs' Attorney,

Thornton E. Lallier, Esq.
Lallier Law Office
159 Main Street, P.O. Box 689
Amesbury, MA 01913
978-388-9500
BBO#283680

Dated: June 8, 2005

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)___ Anthony N. Wellinger, et al

versus George Gilman et als

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE
   CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

   ___ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   ___ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   ___ V.    150, 152, 153.

   05 - 1124 RCL

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).
   N/A

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
   COURT?                                                                YES ☐    NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
   PUBLIC INTEREST?   (SEE 28 USC 2403)                                  YES ☐    NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                                         YES ☐    NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO
   TITLE 28 USC 2284?                                                    YES ☐    NO ☒

7. DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS
   (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).                        YES ☐    NO ☒
   OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? -
   (SEE LOCAL RULE 40.1(D)).                                             YES ☐    NO ☐

8. DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF
   THE DISTRICT?                                                         YES ☐    NO ☒
   (a)    IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?_____

9. IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? _Central_

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL
    AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE
    CENTRAL SECTION;  YES ☐ NO ☐       OR WESTERN SECTION;  YES ☐    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME_____ Thornton E. Lallier, Lallier Law Office

ADDRESS_____ 159 Main St., P.O. Box 689, Amesbury, MA 01913

TELEPHONE NO._____ 978-388-9500          Fax: 978-388-9501

(Categfrm.rev - 3/97)

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Anthony N. Wellinger et al

## DEFENDANTS

George Gilman et als

**(b)** County of Residence of First Listed Plaintiff   Essex (MA)
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Rockingham (NH)
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Lallier Law Office,   159 Main St.,
P.O. Box 689, Amesbury, MA 01913   978-388-9500

Attorneys (If Known)

05 CV 11247 RCL

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

☐ 2   U.S. Government
Defendant

U.S.A.

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☒ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☒ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC, Sec. 1332
Brief description of cause:
negligent misrepresentation; conspiracy; MA Chap. 93A

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**
$700,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
June 14, 2005

SIGNATURE OF ATTORNEY OF RECORD
Thornton E. Lallier

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____